996 F.2d 1210
 Pens. Plan Guide P 23881S
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Kathy FLEMING, Plaintiff-Appellant,
v.
BORDEN, INCORPORATED, Defendant-Appellee.
 No. 92-2009.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 8, 1993.
Decided: June 28, 1993.
 
 Appeal from the United States District Court for the District of South Carolina, at Spartanburg. G. Ross Anderson, Jr., District Judge. (CA-89-2839-7)
 Charles Richard Kelly, Columbia, South Carolina, for Appellant.
 Melegia Lee Daniels, Jr., Daniels & Brandon, Greenville, South Carolina, for Appellee.
 D.S.C.
 AFFIRMED.
 Before PHILLIPS, LUTTIG, and WILLIAMS, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Kathy Fleming brings this appeal from an order of the district court granting summary judgment to Borden, Incorporated, on Fleming's claim under the Employee Retirement Income Security Act ("ERISA"). We affirm.
 
 
 2
 Fleming began work on the sanitation crew at Borden's snack food factory in Spartanburg, South Carolina in 1981. Various nonoccupational health problems forced her to take several extended leaves of absence during the period from 1983 through 1985, during which times she collected short-term disability benefits under Borden's employee benefits plan. Even when not on disability leave, however, Fleming frequently missed work. She was warned by her supervisors in June 1985, and again in December of that year, that her absences were becoming excessive, and instructed to improve her attendance.
 
 
 3
 On January 30, 1986, Fleming hurt her right arm while at work. Borden assigned her to light duty that would not require the use of her injured arm. Fleming's attendance record, however, continued to worsen after the injury. While she sometimes performed her newly assigned tasks for days or weeks without incident, at other times she missed work or left her shift after only a few minutes, allegedly due to pains in her arm. Although appellant was under the care of at least five physicians for various ailments, none diagnosed her as disabled or recommended that she stop working. Fleming's supervisors repeatedly warned her, both orally and in writing, that her absenteeism was placing her job in jeopardy. On June 23, 1986, after one of appellant's doctors opined that she could return to her regular duties at the plant, Fleming received a final warning. She failed to work a full shift the next two nights. On June 25, having missed at least sixty days of work in 1986, Fleming was terminated by Borden due to excessive absences.
 
 
 4
 Fleming filed suit in South Carolina state court against her former employer, alleging contract and tort causes of action stemming from her dismissal. Borden removed the action to the district court, which then allowed Fleming to amend her complaint to add an ERISA claim, namely that Borden had discharged her in order to prevent her from qualifying for long-term disability benefits under appellee's benefits plan, in violation of ERISA section 510, 29 U.S.C. § 1140.* The district court remanded the state law claims to state court. Upon their disposition, Borden moved for summary judgment on Fleming's ERISA claim.
 
 
 5
 The district court granted the motion. Applying the framework set forth in Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231 (4th Cir. 1991), the court held that Fleming had failed to establish a prima facie case of discriminatory discharge under section 510. While Fleming claimed to have been nearing the twenty-seven week disability threshold required for eligibility for long-term benefits at the time she was terminated, the district court noted that she never actually established, through medical opinion or otherwise, that she was in fact disabled at any time between her injury on January 30, 1986, and her dismissal five months later. Thus, far from approaching eligibility for long-term benefits, Fleming had not even satisfied the prerequisite necessary to start the disability clock running. Moreover, the district court concluded that there was no evidence that the supervisors who fired Fleming had ever even considered the possibility that she might be proceeding toward eligibility for long-term disability benefits at the time they discharged her. Since Fleming was unable to produce any evidence of a causal connection between her membership in the benefits plan and her discharge, an essential element of her ERISA claim, the district court held that Borden was entitled to judgment.
 
 
 6
 We have read the briefs, heard oral argument, and given full consideration to Fleming's contentions. Finding no error in the thorough opinion of the court below, Fleming v. Borden, Inc., No. 89-2839-7 (D.S.C. July 9, 1992), and agreeing that appellant failed to establish her disability through medical opinion during the relevant time period, or to provide any evidence of a causal link between her discharge and her membership in the Borden benefits plan, we affirm on the reasoning of the district court.
 
 AFFIRMED
 
 
 *
 "It shall be unlawful for any person to discharge ... a participant ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the [employer's benefits] plan." 29 U.S.C. § 1140